## MAY T. HERBERT *v.* WILLIAM HENRY, A. MARQUES, HENRY BICKNELL, C. F. PETERSON AND F. ANDRADE.

### APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED JUNE 23, 1910.                    DECIDED JULY 1, 1910.

PERRY AND DE BOLT, JJ., AND CIRCUIT JUDGE COOPER
IN PLACE OF HARTWELL, C.J.

EQUITY—*principal and agent—money had and received.*

Where an agent receives money for his principal for certain
mining stock and fails to remit the same, a bill in equity for an
accounting is not proper, there being a plain, adequate and com-
plete remedy by an action at law for money had and received.

OPINION OF THE COURT BY DE BOLT, J.

This is an interlocutory appeal by defendants from an order
overruling their demurrers to plaintiff's bill.

The facts, as alleged in the bill, are, in substance, as fol-
lows: That plaintiff is a resident of Sydney, Australia; that
defendants all reside in Honolulu, Territory of Hawaii; that
plaintiff, together with her husband and children, resided in
this Territory for a considerable time prior to August 22,
1908, when they left, intending to make their home in Sydney,
where they have since resided; that plaintiff's husband, H. L.
Herbert, returned alone on a business trip, arriving at Hono-
lulu January 7, 1909, and returned to Australia on the steam-
ship sailing from Honolulu February 7, 1909; that plaintiff,
while a resident of Hawaii, acquired 40,000 shares of the
capital stock of the Benton G. Mining Company, an Arizona
corporation, of which defendant Henry is secretary; that prior
to April 23, 1909, plaintiff entrusted the certificate for said
stock to the possession of Henry as her agent; that on· or about
said last mentioned date, plaintiff sold said stock to one T. J.
Ryan for the sum of $2000, and thereupon instructed her agent
to transfer the same to the purchaser and remit the proceeds
to her; that Henry, instead of remitting the proceeds of the
sale as directed, retained the same; that on June 22, 1909, the
defendants Peterson and Andrade, as attorneys for defendant
Marques, filed in the circuit court of the first circuit, an action
against plaintiff and her husband, claiming $640 as rent, in
which action summons was issued and served at a purported

last and usual place of abode of the plaintiff and her husband at the Beach Road near Hobron Lane in Honolulu, though at that time, as well as at all other times hereinafter mentioned, the defendants knew the last and usual place of abode of plaintiff and her husband was in Sydney; that no further proceedings were had by way of service in said case, in which defendant Henry as secretary of the said Mining Co. was summoned as garnishee; that on June 23, 1909, Marques instituted three separate actions in the district court of Honolulu, in which Peterson was his attorney, upon three certain notes signed by H. L. Herbert, in each of which Henry was summoned as garnishee, both individually and as secretary of said Mining Co., and in each of which service was purported to have been made on H. L. Herbert at 1475 Ala Moana Road, Honolulu, as his last and usual place of abode, judgment being rendered against him in each action; that plaintiff and her husband were unaware of said proceedings until June 30, 1909, when Henry cabled to plaintiff as follows: "Marques garnishes for debt; unless settled immediately balance money jeopardized; shall I pay and remit balance. Henry." To which plaintiff responded by cable on July 1, 1909. "To Henry, Honolulu. Yes. Herbert." To which Henry, on July 2, replied by cable: "To Herbert. Answer unsatisfactory. Please both answer." To which plaintiff and her husband replied by cable July 4, as follows: "To Henry, Honolulu. Yes. May and H. Herbert." That on June 30, 1909, Bicknell, by Peterson, his attorney, brought an action against H. L. Herbert in the district court of Honolulu, summoning Henry as garnishee, claiming the sum of $96 and interest for dental services rendered to the two daughters of plaintiff; that summons was duly issued and on said date served on the garnishee; that no service was made or purported to have been made on H. L. Herbert therein other than a purported service made July 2, 1909, at Mrs. Kearns', 184 South Hotel street, in Honolulu, described as the last and

Herbert v. Henry, 20 Haw. 186.

usual place of abode of H. L. Herbert. (See ante p. 132.) That plaintiff and her husband admit that he executed the notes on which the actions were brought by defendant Marques; but deny that they were indebted to said Marques for rent, and that H. L. Herbert was not indebted to Bicknell; that having no information other than the cablegrams, and knowing of said notes and being willing to pay them, plaintiff and her husband sent the cablegrams understanding that the cablegrams sent by Henry referred to a garnishment for the claim on said notes; that the authority contained in said cablegrams was intended and only authorized Henry to settle the garnishment for the claim on said notes, but that, without any regard to the interests of plaintiff and her husband, and particularly without regard to his duty as agent for plaintiff, Henry voluntarily without any authority whatsoever paid Peterson and Andrade, as attorneys for Marques, the sum of $849.85 in settlement of said action brought by him in the circuit court against plaintiff and her husband, which action was thereupon dismissed; that Henry particularly acted without regard to his duty as agent for plaintiff in said action brought by Bicknell; "that plaintiff has been informed and believes, and on said information and belief alleges, that all of said acts and proceedings of said defendant were in pursuance of a combination and conspiracy for the purpose of sequestering and appropriating the money of the plaintiff in the hands of the said William Henry to the use and benefit of the other defendants herein, without due process of law; and that, in pursuance of said conspiracy, the proceedings above set forth were had and the said payments made."

The prayer of the bill is, that William Henry render an account of all moneys received and paid on account of the plaintiff, and that the other defendants be adjudged to account for any and all moneys which they have unlawfully obtained from said William Henry as agent of plaintiff, and for general relief.

Each of the defendants interposed a demurrer to the bill,

alleging various grounds, but relying particularly upon the ground that the plaintiff had a plain, adequate and complete remedy at the common law. In this view of the case, as presented by the pleadings, we concur with the defendants. The facts as set forth in the bill present simply a case of money had and received by the defendant, William Henry, for the use and benefit of the plaintiff, and a declaration in assumpsit in the usual form would have fully stated the plaintiff's cause of action. (*Gaines* v. *Miller*, 111 U. S. 395.)

Upon an examination of the bill it will be observed that the allegation of such facts as are ordinarily necessary, in cases of this character, to invoke the equitable powers of a court of chancery are totally absent. There is no allegation of insolvency, or that a judgment at law could not be enforced. There is no trust alleged, or that the money in the hands of the agent was a trust fund, or impressed with a trust; nor is there any sufficient allegation of fraud or collusion. The charge of conspiracy (quoted above) is a mere legal conclusion. No facts are alleged therein, nor does the bill contain any allegation of fact sufficient to warrant such a conclusion.

There is no occasion for a discovery or an accounting because plaintiff knows how much the defendant, Henry, received for the stock and what he did with it. Indeed, it would seem from the minute particularity of the allegations as set forth in the bill, that the plaintiff was fully informed regarding her money and business matters in the hands of her agent. She does not allege any fact, as a basis for an accounting, which is peculiarly within the knowledge of her agent and not within her own knowledge. The mere fact that her agent, as she contends, has been remiss in his duties as such,—for instance his failure to promptly remit the money he received for the stock, or that he may have permitted the money to be garnished in his hands, or that he may have paid claims that had no valid existence, or that the proceedings as set forth in the bill may have been

without due process of law, is not sufficient to give a court of equity jurisdiction. The facts, as disclosed by the bill, are those which constitute the ordinary relation of principal and agent. Without something more this is not sufficient to give a court of equity jurisdiction. "The mere relation of principal and agent without more,—the relation not being really fiduciary in its nature, and no obstacle intervening to a recovery at law,—is insufficient to enable a principal to maintain the action against his agent. * * * But where the relation is such that a confidence is reposed by the principal in his agent, and the matters for which an accounting is sought are peculiarly within the knowledge of the latter, equity will assume jurisdiction." (Pomeroy's Eq. Jur. Sec. 1421, note 1.)

The bill fails to disclose any fact or reason whatsoever why the plaintiff's claim "cannot be conveniently and properly adjusted and settled in an action at law." (R. L. Sec. 1834.)

See *Warner* v. *McMullin,* 131 Pa. 370, 381; *Taylor* v. *Turner,* 87 Ill. 296, 302; *Crothers* v. *Lee,* 29 Ala. 337, 341; 22 Ency. P. & P., 15, 17.

Having, therefore, reached the conclusion that there is no equity in the bill, other questions raised by the demurrers will not be considered.

The order appealed from is reversed and the demurrers are sustained, provided, that the plaintiff may have five days within which to file an amended bill, should she be so advised; otherwise the bill to be dismissed.

*A. L. Castle and G. A. Davis (Castle & Withington and G. A. Davis* on the brief) for plaintiff.

*C. F. Peterson* for defendants.